May it please the Court, my name is Jeffrey Martins, and I'm representing the petitioner in this matter, Ms. Regina Kaur. The IJ based her denial of Ms. Kaur's request for asylum on essentially two grounds. The first was an adverse credibility finding, and the second was that if the adverse credibility finding were reversed on appeal, that Ms. Kaur had failed to demonstrate a nexus to protect the ground. I'd like to begin by discussing the judge's adverse credibility finding, which was based on essentially four areas. I think I could ask you to speak up just a smidge. I'm sorry. Okay. The first area that the IJ found Ms. Kaur's testimony lacking credibility was with regard to Ms. Kaur's knowledge of her husband's duties as a police officer. The second ground was regarding the number of men who had raped Ms. Kaur while she was in police custody. And the third was whether or not the use of painkillers is an appropriate treatment following Ms. Kaur's rape. And the final one was regarding Ms. Kaur's travels within India following her arrest and prior to her departure from India during that timeframe. Now, two of these areas are unsupported by substantial evidence in the record. The third is based on just pure speculation and conjecture by the immigration judge. And the final one is also not supported by the record, but more importantly, I think it's immaterial in establishing eligibility for asylum. I'd like to discuss the first adverse credibility finding that I think would be the most substantive if it were in the record, and that's regarding the number of police officers that raped Ms. Kaur while she was in custody. The IJ bases her finding in this regard on Ms. Kaur's declaration in her asylum application and testimony before the asylum officer. There's no evidence in this case about what Ms. Kaur testified before the asylum officer, other than Ms. Kaur's own testimony in the courtroom. The asylum officer didn't appear and testify. There's no interviewing notes from the asylum office. The asylum officer's assessment is not a part of the record. The only thing that's in the record is what Ms. Kaur said happened at the asylum office. And this is on page 38 of the extracts records during the cross-examination. Mr. Gildaya, the trial attorney, is questioning Ms. Kaur. He asks her, did you tell the asylum officer that you were raped by three men rather than one man? The answer, whatever questions he asked for me, I answered those only. Question, does that mean you didn't tell the asylum officer that you were raped by three men? Answer, specifically, I did not. It's an extraordinary presumption to conclude from this exchange, which is the only evidence in the record about what happened before the asylum office, that Ms. Kaur's testimony before the asylum office is inconsistent with what happened in the immigration court. Counsel's brief for the government even characterizes it as a presumption as well. It's common practice during asylum office interviews for asylum officers, when they reach a point in the interview where they're approaching a delicate matter, simply to ask for a confirmation of that information. And if Ms. Kaur was only asked, were you raped, then her responses would make perfect sense, because she never was asked whether or not she was raped by three men or not, which is what is consistent with what her testimony was in the immigration court. And more to the point, there is no evidence about what she was asked at the asylum office or what her answers were other than this exchange right here. The other bit of information that the immigration judge uses to determine that her testimony was inconsistent was her declaration. In her declaration, it doesn't indicate at all how many men raped her. It discusses one rape, but then it also indicates that that station head officer who had raped her and used her as a whore was her language. I think that there's really no other reasonable interpretation to make of the use of the word whore, which necessarily entails in its definition sex with more than one person. So I think that her testimony is definitely not inconsistent with her declaration or with the asylum office testimony. And I think this is the main area where the immigration judge really questioned Ms. Kaur's credibility. There's other areas that she mentioned as well, which I'll discuss. The immigration judge considered this to be the most serious. Yes, yes, definitely. And it's not supported by substantial evidence in the record. The next ground was for the evidence credibility finding was with regard to Ms. Kaur's husband's duties as a police officer. The judge characterized her as having difficulty describing what her duties of her husband were. If we look at the record on page 33 of the extractive records, she's asked, what was his job? Answer, he was a driver in the police station. There's no difficulty or hesitation. And then she continues further, the next question, and did that remain his job throughout his police career? Answer, first he was known in the initial stages. He was a constable. Then he did get some training, and then he became a driver. She's not struggling here. She's not having any difficulty. She's explaining in more detail about what the nature of the duties were that he had at the police office. The judge's conclusions that she had difficulty describing the duties is simply not supported by an examination of the record. This continues with the next area that she questioned. Did she describe his duties other than a driver? Or is it just that was what she said? No, that was what she said. She described the progress of his career through the police department by saying he started as a constable and he got some training, but she also mentioned in her testimony that it's not customary for wives in India to know in great detail what the exact duties of their husband were at the police station, which I think is a reasonable response to be impressed for additional information. Is there anything in the record to show what a driver is in that country? Because what we think of as a driver doesn't sound like a police officer, but that would be a category of police officer, like sergeant or something like that. Yes, Your Honor, there was some indication when they were – in fact, there's the next area that I was just going to discuss about whether or not her husband had authority to make arrests as a driver. In the extract of records at page 34, she's asked, does he also arrest people if they – and her answer is, you see, the Punjab police has a lot of power. The driver is there. Everybody is there. Question, as far as you know, I'm not talking about arresting Sikh youth and killing them in false encounters. I'm talking just about arresting common criminals. As far as you know, as a driver, answer, yes, he had, yes, he did. So she is testifying that as a driver, you have the authority to make arrests as a police officer there. The next area that I want to discuss about regarding her husband's duties is an area that really requires a close examination of the record. The immigration judge had a lot of concern about Ms. Kaur's husband being asked to commit false encounters in 1984 and then not having any problems again until 1996. This is not what happened in the record. This is not what Ms. Kaur testified to. On page 35 of the extract of records, she's asked, so from 1984 or 85, when he started complaining about the abuses of his police department until 1995, 10 years later, nobody had asked him to engage in false encounters. Answer, they must have told him, but he did not especially tell me or let her talk to me about it. What Ms. Kaur is clearly saying here is that she doesn't have any personal information about that. She's speculating that. She thinks he may have been asked, but what the judge does is take that as fact and then conclude that her husband had been, in fact, defying his superiors for a 12-year period of time and didn't have any problems until the end, when that is not what Ms. Kaur testified to. Now, the next area of the judge's adverse credibility finding is regarding whether or not painkillers are appropriate treatment following victims, rape victims' experience. This is wholly unsupported, again, by evidence in the record, and it's really based on just a speculation of the judge regarding what is appropriate treatment. There's no evidence in the record about what is appropriate treatment or what is normal treatment in India for victims of rape. Did you want to reserve some time or do you want to use it all now? Yeah, you know, I'll reserve some time for rebuttal. Thank you. Thank you, Mr. Martins. Good morning. Good morning. May it please the Court, I'm William Cole. You're representing Attorney General Gonzalez. First, in her brief, Ms. Kaur argues that the Board of Immigration Appeals erred by issuing affirmance without opinion in this case. She argues that on pages 10, 12, through 12 and 13. I would just like to make the point, although it hasn't been raised in oral argument this morning, that this Court really has answered that question in the Falcon-Karish case from a year and a half ago. I think, Judge Silverman, you were on that panel. That is the reason why we have not, although we cited Falcon-Karish, have not discussed that any further, and I will not discuss that any further this morning. The question here is whether Ms. Kaur presented a valid claim for asylum, withholding of removal, or protection under the CAT. The immigration judge rejected her claims because she had serious reservations about Ms. Kaur's veracity and because of changed country conditions. This Court must determine whether her decision, the IJ's decision, was supported by reasonable, substantial, and probative evidence on the record, and it must deny relief unless she has presented evidence so compelling that no reasonable fact finder could find that the IJ was not credible. Let's look then under this, within this system of review, at the particular items that have just been raised by the Petitioner's Counsel. What's your strongest point on lack of credibility here? I think probably the strongest point is that rape testimony, that there was only one rapist when the declaration was written, and four years later there were three, demonstrating the possibility, at least, that here was someone who was trying to make a more compelling case before the judge and, unfortunately, destroying credibility in the process. Is that really a significant difference, that she was raped by one officer's testimony? Well, Your Honor, I would certainly think so. I guess it's hard for me to make a determination on that point. But when you're trying to look at whether someone's credible, you look at whether things that ought to really stick in their minds are changing in time. She said she wasn't changing. When she wrote in the application that he used her as a whore, that was a figure of speech to imply more than one person. But it doesn't read that way, certainly, in her declaration. And I'll read from that declaration, which is in the record, page 211. He used me as a whore and forced me to do immoral things. Right. It's always he. He ordered my father to surrender my husband. He humiliated, insulted, and raped me during my detention at the police station at gunpoint. I mean, these are things that she signed on to. He did everything what he can think for his pleasure. He used me as a whore. He forced me to do immoral things. You would think when trying to make a compelling case that if three men were involved in this, all three government employees, all three government officials, that this would be something that would have been put in that original statement. Then there's the question, which hasn't yet been discussed by opposing counsel, of where Ms. Carr went. Before you go to that, the immigration judge considered the reference to the two other men as the most glaring discrepancy. Right. If we disagree with you and the immigration judge and believe that there was no inconsistency or they can be reconciled and that she was describing the first officer in the sense of what a pimp does, which is use the woman for other purposes, doesn't that cast serious doubt on his credibility, the IJ's credibility determination? If we disagree with him on that, the most glaring inconsistency? There are five, I think, serious issues that have been raised. That is one of them. And certainly it weakens the government's case if you determine that one of those five has not been proven, has not been shown by the standards that this court has to comply with on reviewing IJ decisions that have been affirmed by the BIA. I think the second issue, though, is it comes close to the first in terms of importance. And that's the question of where Ms. Carr went and when she went there after the date of the alleged rape. Obviously, if she was so traumatized by that rape that she immediately left her hometown so that this would not be likely to happen again, that would be really significant. What she said in her original declaration, though, was that she went back home and stayed there for the next five months, living with her parents. And that was the same location where her father allegedly had been attacked by these same police. When she got, four years later, before the IJ, she said, oh, no, this isn't what happened. I left within a week and I went to the home of a relative, of a distant relative, and I stayed there during this period of time before I then went to New Delhi and then on to San Francisco. Now, that, again, is the kind of thing, I mean, a judge hears that, sees that discrepancy, can't tell what is true and what isn't. Now, if that doesn't throw some doubt on the credibility of this petitioner, then I'm not quite sure what would. That's a serious, very serious omission. The third matter has been raised by opposing counsel, and that's the evidence of treatment for the rape. The parents, and I think the element of that that is, that seems to be the most significant, is that she could not get any testimony that she was ever treated for rape. It wasn't just the type of treatment. It was that she said her parents couldn't get the doctor to indicate that she'd even been in the hospital. And she didn't submit a statement from her parents showing that she had ever been in the hospital. Of course, I mean, she never showed anything to the I.J. that indicated their husband even had been a policeman. I mean, there was no evidence, really, to shore up these statements that she was making. And certainly where she said ---- Did she have to corroborate that her husband was a policeman? No. I don't think that as a matter of law she had to. But it would certainly have strengthened her case in a situation where there was so much doubt being thrown on her testimony. And as to that issue, I mean, we've heard that she was ---- that she had called him a driver. Originally, she didn't. She just said he's in the police. It was only before the I.J. that, under questioning, she said, well, he was a driver. But, you know, I don't know ---- at various points she said, I don't know what he did. But then she'd say, yes, he was asked to make arrests. He never did that. And interestingly, he never did that during the period of time when Sikh-Hindu tensions were at their highest. It was only after that period was over in 1996 that suddenly, when everything in the Punjab is quiet, everything gets up to an elevated level of difficulty with her and with her husband. Is there anything in the record to show that a driver is not a police officer? No. There is nothing to show. Because she's ---- her oral testimony and her statement and her declaration is all we have on any side of that issue. And finally, there are the country conditions, the fifth issue, and that is just what I was referring to, that according to the State Department, terrorist activities were eliminated in the Punjab by mid-1993. Now, I would just raise one other point, that in the affidavits that were supplied by her father and her uncle, she made or they made a very interesting statement. I mean, here she is, a woman who left her husband, her parents, her children behind, and she has her father write in and say, please, BIA, please, INS, allow my daughter in so we can reunite the family. Now, that is bizarre, and I don't know quite what to make of it. But we suggest that the way to reunite this family is for Ms. Kaur to join the rest of her family, who, as far as the evidence shows, have not been harmed since she left. Thank you very much, Mr. Cole. Mr. Martins, you've got a couple of minutes left. With regard to country conditions information, the end of militant and terrorist activities is quite different than the end of police abuses. And in the IJ's decision, the only consideration of country conditions information is with regard to Ms. Kaur's request for relief under the U.N. Convention Against Torture. The only other point at which the IJ mentions country conditions is saying that the testimony is inconsistent with known country conditions. There's no consideration of how it's inconsistent. There's no mention or analysis of the country conditions. There's no way to determine whether or not the immigration judge used that information in a proper fashion in determining Ms. Kaur's eligibility for asylum. Well, then it's your position that if we think the IJ made an error by finding that your client was incredible, that it goes back and the country conditions are to be considered by the IJ then? Well, the immigration judge did not consider country conditions in her decision. Okay. But can she do it on remand? Can she do it on remand, or are you saying that there's no remand to be had here? Well, you know, I'd prefer not to have remand because I think Ms. Kaur has established eligibility for asylum based on her testimony and based on the evidence that's in the record. Well, since the IJ found her not to be credible, there's been no finding as to the country conditions in this case, has there? That's true, other than her mention that. So we can't make findings. Supreme Court has told us that we can't make findings. Right. I understand that, Your Honor. The only other mention that Ms. Kaur made is that she made an alternative holding. I'm trying to remember. Yeah, there was the alternative holding of that Ms. Kaur failed to demonstrate a nexus to protect the ground. And I see I'm out of time here, so I'd like to just submit on a brief if that's acceptable. I'd just like to make one last quick comment about cooperating documentation. If the adverse credibility finding could be supported by the record, then there could be a reasonable request for cooperating documents. But in this case, there's not substantial evidence to support that finding. So the immigration judge is not allowed to really bootstrap in a requirement to have additional cooperating documents just by saying you're not credible when there's not evidence in the record to support that. Mr. Martins, Mr. Cole, thank you. The case just argued is submitted. Thank you, Your Honor. Thank you. 0371289, Saney v. Ashcroft.
judges: Alarcon, Siler , Silverman